Creedon, J.
The appeal from an award of $9,460.97 to the plaintiff, Mexamerican Hides, on cross motions for Summary Judgment challenges the propriety of the trial court’s determination of damages.
The defendant-appellant Central International Co. claims the court committed three errors of law in its decision:
I. The court did not include revolving-credit interest charges paid by “Central” as incidental damages allowed under M.G.L.C. 106, §2-710.
II. The court did not credit “Central” with an additional $4,029.90 in past due balance owed to it by “Mexamerican.”
III. The court denied lost profits in future contracts originally contemplated but not completed as incidental to the breach of contracts.
After review of the lower court’s decision and all of the applicable transcripts, exhibits, and memoranda, we affirm that Court’s decision.
Mexamerican Hides, the plaintiff-buyer, sued to recover from “Central,” the defendant-seller, a portion of the $30,000.00 deposit it had paid seller on a contract to buy cow hides. The buyer, as a result of financial difficulties surrounding the devaluation of the Mexican Peso in December of 1994, was unable to perform its contract to pay the seller $92,220.30 for the cow hides. Following the buyer’s breach of contract, the seller sold the cow hides, six months later, to a tannery in Thailand at less than the agreed contract with the buyer and has refused to remit any of the $30,000.00 deposit on the cow hides claiming its damages exceed the $30,000.00 deposit. The case was decided on cross motions for summary judgment on stated accounts, pleadings, contract documents, and affidavits. The litigants indicated that the court simply had to apply the correct interpretation of the Uniform Commercial Code, as this transaction of a sale of goods was entirely governed by the Code. The appellant claims that the U.C.C. was misapplied by the court.
Although the judge’s memorandum of decision does not highlight the specific sections of the U.C.C. on which she relies, it is clear from the decision that the breach of contract by the buyer triggered M.G.L.c. 106, §2-706 and §2-710 as the “Seller’s remedies.”
Section 2-706 states:
(1) Under the conditions stated in Section 2-703 on seller’s remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially *328 reasonable manner, the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this Article (Section 2-710), but less expenses saved in consequence of the buyer’s breach.
Section 2-710 Seller’s Incidental Damages:
Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer’s breach, in connection with return or resale of the goods or otherwise resulting from the breach.
The court, in its decision, followed the language of Section 2-706 and awarded the difference between the resale price in Thailand and the contract price due at delivery in Laredo, Texas. Her findings related only to the initial contract on which the buyer brought suit and included the agreed past due balance, on other prior contracts of $2,000.00 as part of this contract. It did not include, and should not have, the rest of the prior past due balance of $4,029.90 as that was part of future contracts not the subject of this suit. In not crediting the past due amount, the court did not find it an element of the present contract. The finding is supported by the evidence.
Additionally, the court did not find the “lost profits” on future contracts to be an element of damages to the present contract for the sale of the cow hides. While the seller has argued that the “lost profits” are incidental damages, the court did not so find, as it properly considered those elements with contracts not the subject of the present suit. Those damages are more properly labeled “consequential damages” and are not available as a seller’s remedy by the Uniform Commercial Code. Consequential damages are only available as a buyer’s remedy.
Lastly, the court did not find the revolving credit interest charges alleged to have been paid to Fleet Bank as incidental damages by the seller under §2-710 of the commercial code. The seller indicated that from the date the buyer owed seller the $92,220.30 for the cow hides it had to pay interest at 12% to the time of its resale of the cow hides as part of its revolving credit interest in the amount of $3,251.17 and $2,886.56 respectively. The only evidence of this interest was an affidavit by the seller’s vice-president, John J. Goodfellow, which was unsupported by any documents relating to these charges. Since this action was decided on cross motions for summary judgment, all of the buyer’s pleadings, depositions, interrogatory answers, and admissions and affidavits were countervailing evidence the court had at its disposal.
The record reflects some minor differences in certain figures in the parties’ affidavits. Since neither party questions this discrepancy in this appeal, we determine II and III above not to be in issue in our analysis.
ISSUE OF LA W
The question of whether the interest charges of $3,251.17 and $2,886.56 were incidental damages recoverable under Section 2-710 of the Uniform Commercial Code has not been decided by Massachusetts Appellate Courts. The trial judge in the Memorandum of Decision states:
‘The defendant has not proved that interest charges, which it claims, as incidental damages, are related to its purchase of the goods for resale to the plaintiff.”
Quite simply, the trier of fact decided that the information provided by the seller’s affidavit was not specifically tied to the buyer’s breach of the contract. Section 2-710 of the U.C.C. allows incidental damages that flow, or result from the breach. These claimed interest charges, even if proven, which of course they were not, were bank charges tied to the seller’s business operation as a broker of cow *329 hides. These charges were incurred prior to the breach of contract, not after, as required by §2-710. No documents were provided at the hearing of the cross motions for summary judgment that in any way relate the interest charges to the 1500 cow hides breach of the contract with the buyer. The trial judge could not have speculated that these interest charges resulted from the buyer’s breach. In paragraphs four and five of her memorandum of decision, the seller was given credit for expenses of storage and weight loss of the cow hides from the time of the breach to the resale of the cow hides in Thailand. These §2-710 incidental damages were added to the damages the judge awarded in conformance with §2-706 of the U.C.C. Both types of damages are allowed by the U.C.C. in disputes where buyers have breached the contract.
These interest charges would not be §2-710 incidental damages. They would better be labeled consequential damages. Consequential damages are not available to a seller according to the U.C.C. following a buyer’s breach. Consequential damages are only available to a buyer following a seller’s breach of contract as illustrated by §2-712(2) of the U.C.C.
The appellant-seller urges this court to follow the reasoning of Cesco Manufacturing Corp. v. Norcross, Inc., 7 Mass. App. Ct. 837 (1979) and allow these interest charges as damages that the seller would not have incurred but for the delay in resale of the cow hides to the tannery in Thailand. The Cesco case, Ibid, was not a §2-706 damage decision. Our appeals court treated the fact pattern in Cesco as a §2-708(2) damage case and in that setting uses a different standard in awarding seller’s damages. At page 843 of the Cesco decision, Ibid, the court states:
“The legislative history of §2-708(2) shows that it was intended to cover the situation where a seller learns of the buyer’s breach while in the process of manufacture.”
The present case is not a manufacturing case. It is a simple sale of goods readily saleable in open markets. Indeed, the appellant is a broker of hides not a manufacturer of hides. Were the hides synthetically manufactured, then the Cesco'decision could apply. Here the trial judge correctly rejected the argument proffered by the seller-defendant.
The facts of the present case are more like those presented in a Federal District Court in Wisconsin, Afram Export Corp. v. Metallurgiki Halyps, SA., 772 F.2d 1358 (7th Cir. 1985). There the circuit judge Posner wrote in his analysis of the interest charges that Afram Export, the seller, was attempting to collect from Metallurgiki, the breaching buyer, at page 1369, “Afram is not really complaining about an extra interest expense; it is complaining about losing the use of part of the money it borrowed from the bank, the part that was tied up in the junked cars longer than it would have been had Metallurgiki not broken the contract.”
Similarly, “Central” (our present seller) is attempting to collect its revolving credit interest charge during the period it held the cow hides from breach by the buyer until re-sale in Thailand as an incidental damage. Afram again at page 1370 states: - ’ ■
“But we do not think the law has evolved to the point where every time a buyer breaks a contract, the seller is entitled to the time value of the money tied up in the contract as incidental damages. All the seller is entitled to is an out-of-pocket interest expense that would not have been incurred but for the breach. We have found no cases where... the seller, was able to recover interest on'a general business loan not tied to the subject matter of the sale.”
. Since the trial judge found that “Central”, had not proven its interest charges were tied to the breach by “Mexamerican” as incidental damages they should rather be characterized as lost opportunity damages or consequential damages.
A similar result and discussion of incidental damages and consequential damages vis avis “interest charges” is found in a Michigan case, S.C. Gray, Inc. v. Ford *330 Motor Co., 986 N.W.2d 34 (1979) at pages 42-44.
Although no case has appeared in Massachusetts Appellate decisions, we believe the trial judge properly applied the U.C.C. with respect to seller’s damages. And therefore we affirm her decision on defendant’s motion for summary judgment.
So ordered.